**EXHIBIT B – Part 2**

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF DELAWARE

STEVE A. HICKMAN        ]
TAWANDA WEATHERSPOON    ]     C.A. No. 05-839 *KAJ*
    Plaintiffs          ]
                    ]
    vs                ]
                    ]
DET. MARZEC & DRUG     ]
ENFORCEMENT ANGENGY   ]
    Defendants       ]
                    ]

        Now comes the plaintiffs, Steve Hickman and Tawanda Weatherspoon, pro se, who so moves the Honor Court, with this Attachment, as it goes as follows:

        ( 1). On 12-27-05, we received notice of certified letter from Drug Enforcement Agency, about our illegally seized property.

        a.  This is definitely a violation of our Due Process rights and Equal Protection of the Law. [14th Amendment].

FILED

JAN - 4 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

        b.  This notification comes after more than three (3) months After the seizures as well as a hearing in the Superior Court in the Month  of November, in which this information should have been Made available to plaintiffs

        This show a consistent and deliberate pattern that is throughout The whole case, with only one intent, to cause the plaintiffs undue harm And distress under the color of the law.

        The Drug Enforcement Agency. Have no legal or lawful reason Or rationale behind the seizures or need to continue to possess the Personal property of plaintiffs and a Order should be issued to give the Necessary relief.

                           Respectfully, submitted
                           *Steve Hickman*      *And Tawanda Weatherspoon*
                           Tawanda Weatherspoon
                           Steve Hickman

ccDet Marzec & DEA                   12-29-05

Forfeiture Counsel
Asset Forfeiture Section
Office of Operations Management
Drug Enforcement Administration
P.O. Box 1475 ,
Quantico, Virginia 22134-1475

Asset Forfeiture Section
Office of Operation Management
Drug Enforcement Administration
2401 Jefferson Davis Highway
Alexandria, Va. 22301

      Re; Property of Tawanda Weatherspoon & Steve Hickman
      Asset # 05-DEA-457634 & 05-DEA-457638

Dear Sir or Madam:

      We are responding to the Department of Drug Enforcement Adminstration's
attempt of forfeiture of our money and Dodge Durango. A petiton has already been
filed in U.S. District Court for the District of Delaware for Return of this Illegally
seized property,

      (1). The search warrant utilized was invalid, because it was for a residence
in Ellendale, Delaware and property was seized from a residence in Lincoln, DE.

      (2). The wasn't used in any drug/illegal transaction or obtained throuht the
profit from any illegal activities.

      (3). A few years ago Ms _Dawn Denson_ , loan us $30,000 to
begin Mobile Home Rental business.

      (4). We purchased three homes, renovated them and began renting them
a few years ago.

      a. The $12,900 is part of that money and profits made through our legal,
and licensed business.

      b. The Housing Authority recognizes our business and provide financial
assistance for several of our tenants.

      Alot of these records are in your possession, because for some unknown

reason they were seized as well on 09-21-05

(5). The Dodge Durango, has never been, used illegally and personal property of Tawanda Weatherspoon,(a) she has never been involved in any drug or illegal activities and never charge with any type of crime,

(6). The illegal seizures of aforementioned legal and lawful property of Tawanda Weatherspoon and Steve Hickman, has created undue burdens and hardships upon them and their family and have jeopardize their business as well as the health and welfare of them and their three (3) minor children.

> SWORN and Subscribed)
> Sussex County            ) SS:
> State of      DELAWARE)

Sworn and Subscribed, before me a Notary Public for the State of Delaware, in and for the Sussex County, Tawanda Weatherspoon and Steve Hickman, with their signatures, verify the above statements to be the truth to the best their knowledge, under the penalty of perjury, on this 28th day of December, in the year of the Lord 2005, A.D.

_Kathleen E Weeton_
Signature & Seal of Notary

_Tawanda Weatherspoon_
Tawanda Weatherspoon

_Steve Hickman_
Steve Hickman
9008 Greentop Rd
Lincoln, DE. 19960



# U.S. DEPARTMENT OF JUSTICE
# DRUG ENFORCEMENT ADMINISTRATION

Tawanda Renee Weatherspoon
9008 Greentop Road
Lincoln, DE 19960-2908

| | |
|---|---|
| Asset Id: | 05-DEA-457638 |
| Case Number: | CP-05-0036 |
| Property: | 1999 Dodge Durango MPV 4WD SLT SUV |
| Vehicle ID Number: | 1B4HS28Y0XF623450 |
| Asset Value: | $5,950.00 |
| Seizure Date: | 09/21/2005 |
| Seizure Place: | Ellendale, DE |
| Owner Name: | Hickman, Steven Andrew |
| Seized From: | Hickman, Steven Andrew |
| Judicial District: | District of Delaware |

**NOTICE MAILING DATE:** December 22, 2005

## NOTICE OF SEIZURE

The above-described property was seized by Special Agents of the Drug Enforcement Administration (DEA) for forfeiture pursuant to **Title 21, United States Code (U.S.C.), Section 881**, because the property was used or acquired as a result of a violation of the Controlled Substances Act (Title 21, U.S.C., Sections 801 et seq.). The seizure date and place, as well as other pertinent information regarding the property are listed above.

Pursuant to Title 18, U.S.C., Section 983 and Title 19, U.S.C., Sections 1602-1619, procedures to administratively forfeit this property are underway. You may petition the DEA for return of the property or your interest in the property (remission or mitigation), and/or you may contest the seizure and forfeiture of the property in Federal court. **You should review the following procedures very carefully.**

## TO REQUEST REMISSION OR MITIGATION OF FORFEITURE

If you want to request the remission **(pardon)** or mitigation of the forfeiture, you must file a petition for remission or mitigation with the Forfeiture Counsel of the DEA within thirty (30) days of your receipt of this notice. The petition must include proof of your

interest in the property and state the facts and circumstances which you believe justify remission or mitigation. The regulations governing the petition process are set forth in Title 28, Code of Federal Regulations, Part 9.

## TO CONTEST THE FORFEITURE

In addition to, or in lieu of petitioning for remission or mitigation, you may contest the forfeiture of the seized property in UNITED STATES DISTRICT COURT. To do so, you must file a claim with the Forfeiture Counsel of the DEA by **January 26, 2006**. The claim need not be made in any particular form (Title 18, U.S.C., Section 983(a)(2)(D)). The claim shall identify the specific property being claimed; state the claimant's interest in such property; and be made under oath, subject to penalty of perjury (Title 18, U.S.C., Section 983(a)(2)(C)). A frivolous claim may subject the claimant to a civil fine in an amount equal to ten (10) percent of the value of the forfeited property, but in no event will the fine be less than $250 or greater than $5,000 (Title 18, U.S.C., Section 983(h)). Upon the filing of a claim under Title 18, U.S.C., Section 983(a), a claimant may request, pursuant to Section 983(f), release of the seized property during the pendency of

the forfeiture proceeding due to hardship. Requests must be sent to the Forfeiture Counsel of the DEA. The following property is not eligible for hardship release: contraband, currency, or other monetary instruments or electronic funds unless the property constitutes the assets of a legitimate business which has been seized; property to be used as evidence of a violation of the law; property, by reason of design or other characteristic, particularly suited for use in illegal activities; and property likely to be used to commit additional criminal acts if returned to the claimant. If you wish to contest the forfeiture of the asset, you must comply with the procedures set forth herein. Your failure to do so will result in the termination of your interest in the asset, and may preclude your contesting the forfeiture of the asset in any judicial proceeding – either civil or criminal – even if such a proceeding has already been commenced or is commenced in the future.

## WHERE TO FILE CORRESPONDENCE

All submissions must be filed with the **Forfeiture Counsel, Asset Forfeiture Section, Office of Operations Management, Drug Enforcement Administration, HQs Forfeiture Response, P.O. Box 1475, Quantico, Virginia 22134-1475.** Correspondence sent via private delivery must be sent to Asset Forfeiture Section, Office of Operations Management, Drug Enforcement Administration, 2401 Jefferson Davis Highway, Alexandria, VA 22301. **A PETITION, CLAIM, OR OTHER CORRESPONDENCE WILL BE DEEMED FILED WHEN ACTUALLY RECEIVED BY THE DEA ASSET FORFEITURE SECTION IN ARLINGTON, VIRGINIA. SUBMISSIONS BY FACSIMILE OR OTHER ELECTRONIC MEANS WILL NOT BE ACCEPTED.** The Asset Id referenced above should be used with all submissions. **Failure to include the Asset ID may cause a delay in processing your submission(s).**



**U.S. DEPARTMENT OF JUSTICE**
**DRUG ENFORCEMENT ADMINISTRATION**

| | |
|---|---|
| Asset Id: | 05-DEA-457634 |
| Case Number: | CP-05-0036 |
| Property: | $13,320.00 U.S. Currency |
| Asset Value: | $13,320.00 |
| Seizure Date: | 09/21/2005 |
| Seizure Place: | Ellendale, DE |
| Owner Name: | |
| Seized From: | Hickman, Steven |
| Judicial District: | District of Delaware |

Tawanda Renee Weatherspoon
9008 Greentop Road
Lincoln, DE 19960-2908

NOTICE MAILING DATE: December 22, 2005

## NOTICE OF SEIZURE

The above-described property was seized by Special Agents of the Drug Enforcement Administration (DEA) for forfeiture pursuant to **Title 21, United States Code (U.S.C.), Section 881**, because the property was used or acquired as a result of a violation of the Controlled Substances Act (Title 21, U.S.C., Sections 801 et seq.). The seizure date and place, as well as other pertinent information regarding the property are listed above.

Pursuant to Title 18, U.S.C., Section 983 and Title 19, U.S.C., Sections 1602-1619, procedures to administratively forfeit this property are underway. You may petition the DEA for return of the property or your interest in the property (remission or mitigation), and/or you may contest the seizure and forfeiture of the property in Federal court. You should review the following procedures very carefully.

## TO REQUEST REMISSION OR MITIGATION OF FORFEITURE

If you want to request the remission (**pardon**) or mitigation of the forfeiture, you must file a petition for remission or mitigation with the Forfeiture Counsel of the DEA within thirty (**30**) days of your receipt of this notice. The petition must include proof of your

interest in the property and state the facts and circumstances which you believe justify remission or mitigation. The regulations governing the petition process are set forth in Title 28, Code of Federal Regulations, Part 9.

## TO CONTEST THE FORFEITURE

In addition to, or in lieu of petitioning for remission or mitigation, you may contest the forfeiture of the seized property in UNITED STATES DISTRICT COURT. To do so, you must file a claim with the Forfeiture Counsel of the DEA by **January 26, 2006**. The claim need not be made in any particular form (Title 18, U.S.C., Section 983(a)(2)(D)). The claim shall identify the specific property being claimed; state the claimant's interest in such property; and be made under oath, subject to penalty of perjury (Title 18, U.S.C., Section 983(a)(2)(C)). A frivolous claim may subject the claimant to a civil fine in an amount equal to ten (10) percent of the value of the forfeited property, but in no event will the fine be less than $250 or greater than $5,000 (Title 18, U.S.C., Section 983(h)). Upon the filing of a claim under Title 18, U.S.C., Section 983(a), a claimant may request, pursuant to Section 983(f), release of the seized property during the pendency of

the forfeiture proceeding due to hardship. Requests must be sent to the Forfeiture Counsel of the DEA. The following property is not eligible for hardship release: contraband, currency, or other monetary instruments or electronic funds unless the property constitutes the assets of a legitimate business which has been seized; property to be used as evidence of a violation of the law; property, by reason of design or other characteristic, particularly suited for use in illegal activities; and property likely to be used to commit additional criminal acts if returned to the claimant. If you wish to contest the forfeiture of the asset, you must comply with the procedures set forth herein. Your failure to do so will result in the termination of your interest in the asset, and may preclude your contesting the forfeiture of the asset in any judicial proceeding - either civil or criminal - even if such a proceeding has already been commenced or is commenced in the future.

## WHERE TO FILE CORRESPONDENCE

All submissions must be filed with the Forfeiture Counsel, Asset Forfeiture Section, Office of Operations Management, Drug Enforcement Administration, HQs Forfeiture Response, P.O. Box 1475, Quantico, Virginia 22134-1475. Correspondence sent via private delivery must be sent to Asset Forfeiture Section, Office of Operations Management, Drug Enforcement Administration, 2401 Jefferson Davis Highway, Alexandria, VA 22301. A PETITION, CLAIM, OR OTHER CORRESPONDENCE WILL BE DEEMED FILED WHEN ACTUALLY RECEIVED BY THE DEA ASSET FORFEITURE SECTION IN ARLINGTON, VIRGINIA. SUBMISSIONS BY FACSIMILE OR OTHER ELECTRONIC MEANS WILL NOT BE ACCEPTED. The Asset Id referenced above should be used with all submissions. **Failure to include the Asset ID may cause a delay in processing your submission(s).**

IN THE UNITED STATE DISTRICT COURT FOR THE DISTRICT OF DELAWARE

STEVE A. HICKMAN                      ]
& TAWANDA WEATHERSPOON               ]
    Petitioners                  ]
    vs                           ]          C.A. No. _____
                                     ]
DET. MARZEC & DEPARTMENT OF          ]
DRUG ENFORCEMENT AGENCY              ]
    Respondents                  ]
                                     ]          dated: 12/12/05


## PETITION FOR RETURN OF PROPERTY

NOW Comes the petitioners, Steve A. Hickman and Tawanda Weatherspoon, who

So moves the Honorable Court for the Return of their Illegally seized property, and submit

The following in support of the same:

[a]. Det. Marzec and several Police Officer as well as two DEA agents, on 21st day of September 2005, executed a search warrant for a residence in Ellendale, Delaware, illegally searched and seized personal property of Steve Hickman and Tawanda Weatherspoon, who live in Lincoln, Delaware.

[b]. Since date to now Det. Marzec and the Drug Enforcement Agency, have held, utilized and controlled the latter mentioned property, while denying petitioner any type of Due Process of opportunity to regain their illegally seized property.

The facts in responses has totally misrepresented the facts in this case. A

Preliminary Hearing was held on 09-29-05 and the under oath testimony of Det Marzec,

contradicts nearly every fact raised in the resonse by Mr. Martin B. O'Connor. I will enter

the official transcripts of that hearing as well as the Search Warrant used, plus the arrest

warrants utilized by Det Marzec, on the 30th of June and 21st of September.

(1). Det Marzec prepared both Arrest Warrant and Affidavits of Probable Cause and executed both arrest and pursued them not in Federal Courts, but the State of Delaware Court's system. [A-1 thru A-3 & B-1 thru B-3]

(a). The Possession with Intent to Deliver, on 09-21-05, [B-2] is the same in time, date and location as the Possession with Intent to Deliver, on 06-30-05. [A-2] [look at A-3 and compare it to B-3]

(2). Whe asked on the stand under oath about his investigation on the 23rd of June 2005, about did he observe Steve in possession of the plastic bag containing the crack he responded , he didn't see it in his possession that day.

AA-24 reads:

Q. Question : Did you see Steve a Hickman place a plastic bag in the sign?

A.    I did not see a plastic bag, no

In reality no probable cause happen or existed that would support the 23rd as being

the basis for Possession with Intent charge used to arrest Steve Hickman on 09-21-05.

(3). When asked under oath about the Search Warrant, used on 09-21-05 Det Marzec responded , that the warrant was for a residence in Ellendale Delaware, and even stopped in the Town of Ellendale and had the Police Officer of that Town follow him to a residence in Lincoln that he believe was Ellendale.

AA-27 reads:

Q.    Question: Did you apply for this Search Warrant for a residence in Ellendale Delaware?

A.    I applied for the search warrant for Steven Hickman, black male, five seven, two fifty, date of birth 3/19/80, premises known are located at 9008 Greentop Road, Ellendale, Sussex County Delaware.

(4). The Search Warrant list Ellendale as the Town twice also. [AA-1]

(5). No new charges came about as a result of the Search and Seizures [State or Federal] as well as no charges are pending in any Federal Court that the seized property is needed for any prosecution.

These facts were known by Det Marzec at the time of the seizures and the procedures

being used now to deny Steve Hickman and Tawanda Weatherspoon of their legal and lawful

property, is illegal, unlawful, unconstitutional and serves no purposes for the State of Delaware

or the U.S. Government.

(6). First the property shouldn't have been seized, Secondly it should have never left the premises and thirdly the State should participate in the "passing of the buck procedure" it is doing now.

(a). A Delaware Judge issued the Search Warrant, A Delaware Police Officer applied for it as well applied for Arrest warrants, that are being prosecuted in the Delaware Court system, to use the DEA presence as excuse to abuse the petitioners this way is ridiculous.

The property Receipt recieved by Hickman and Weatherspoon wasn't legible at all and

they were not able to obtain any valuable information from it.

Respectfully, submitted

*Steve Hich*
Steve Hickman

Cc: Det. Marzec
U.S. Dept. of Justice

*Tawanda Weatherspoon*
Tawanda Weatherspoon
9008 Greentop Rd
Lincoln, DE. 19960 302-422-9337

*Kathleen E. Weller*
*Notary Public*

Steve Hickman
Towanda Westburgoon
5006 GreenTop Rd
Lincoln DE 19960

Clerk District Court
U.S. District Court
844 King St
Wilmington, DE 19801

EXHIBIT B

IN THE SUPERIOR COURT
STATE OF DELAWARE
SUSSEX COUNTY

**SEARCH WARRANT**

**IN THE MATTER OF: Steve HICKMAN B/M, 5'07", 250 lbs., DOB: 03-19-1980**
AND THE PREMISE KNOWN/LOCATED AT 9008 Greentop Road Ellendale, Sussex County,
Delaware. The premises is further described as a trailer located on the West side of Greentop
Road. The trailer is beige/tan with white trim, a white foundation, white front door with the
numbers "9008" to the right side of the front door. ANY AND ALL STORAGE AREAS,
OUTBUILDINGS, SHEDS, DOGHOUSES, LOCATED ON THE CURTILAGE, AND ANY
AND ALL PERSONS PRESENT, BEING IN THE COUNTY OF SUSSEX, STATE OF
DELAWARE.
THE STATE OF DELAWARE TO: Task Force Officer/Detective Ronald A. Marzec
WITH THE ASSISTANCE OF ANY LAW ENFORCEMENT OFFICER OR ANY
NECESSARY PERSON.

**GREETINGS:**
Upon the annexed affidavit and application or complaint for a search warrant, as I am satisfied
that there is probable cause to believe that certain property, namely:
(See Exhibit "A")
is being concealed on the person, vehicle and/or property known as:
**Steve HICKMAN B/M, 5'07", 250 lbs., DOB: 03-19-1980**
AND THE PREMISE KNOWN/LOCATED AT 9008 Greentop Road Ellendale, Sussex County,
Delaware. The premises is further described as a trailer located on the West side of Greentop
Road. The trailer is beige/tan with white trim, a white foundation, white front door with the
numbers "9008" to the right side of the front door. ANY AND ALL STORAGE AREAS,
OUTBUILDINGS, SHEDS, DOGHOUSES, LOCATED ON THE CURTILAGE, AND ANY
AND ALL PERSONS PRESENT, BEING IN THE COUNTY OF SUSSEX, STATE OF
DELAWARE, described in the annexed affidavit and application or complaint;
    **NOW THEREFORE, YOU ARE HEREBY COMMANDED** within ten (10) days of
the date hereof to search the above named person, vehicle and premises or place for the property
specified in the annexed affidavit and application, and to search any occupant or occupants found
in the house, place and conveyance above named for such property, serving this warrant and
making the search in the daytime, and, if the property papers, articles or things, or any part
thereof, be found there, to seize it, prepare a written inventory of the property seized and to return
a copy of the inventory and this warrant to me forthwith and the person and/or persons in whose
custody or possession, the property was found to be dealt with according to the law.

DATED the _7_ day of September, A.D. 2005.

IN THE SUPERIOR COURT
STATE OF DELAWARE
SUSSEX COUNTY


AFFIDAVIT AND APPLICATION
FOR SEARCH WARRANT

IN THE MATTER OF: Steve HICKMAN B/M, 5'07", 250 lbs., DOB: 03-19-1980
AND THE PREMISE KNOWN/LOCATED AT 9008 Greentop Road Ellendale, Sussex County,
Delaware. The premises is further described as a trailer located on the West side of Greentop
Road. The trailer is beige/tan with white trim, a white foundation, white front door with the
numbers "9008" to the right side of the front door. ANY AND ALL STORAGE AREAS,
OUTBUILDINGS, SHEDS, DOGHOUSES, LOCATED ON THE CURTILAGE, AND ANY
AND ALL PERSONS PRESENT, BEING IN THE COUNTY OF SUSSEX, STATE OF
DELAWARE.
Be it remembered that on this 2⁴day of September, A.D. 2005, before me,
personally appeared Detective / Task Force Officer Ronald A. Marzec, Delmar Police
Department / United State's Department of Justice Drug Enforcement Administration, who being
duly sworn depose and say that they have reason to believe and do believe that in the property of
Steve HICKMAN B/M, 5'07", 250 lbs., DOB: 03-19-1980
AND THE PREMISE KNOWN/LOCATED AT 9008 Greentop Road Ellendale, Sussex County,
Delaware. The premises is further described as a trailer located on the West side of Greentop
Road. The trailer is beige/tan with white trim, a white foundation, white front door with the
numbers "9008" to the right side of the front door. ANY AND ALL STORAGE AREAS,
OUTBUILDINGS, SHEDS, DOGHOUSES, LOCATED ON THE CURTILAGE, AND ANY
AND ALL PERSONS PRESENT, BEING IN THE COUNTY OF SUSSEX, STATE OF
DELAWARE, there has been and/or there is now located and/or concealed certain property in
said house, place, conveyance, and/or on the person/persons or occupants thereof, consisting of
property, papers, articles or things which are instruments of a criminal offense, and/or obtained in
the commission of a crime, and/or designated to be used in the commission of a crime and not
reasonably calculated to be used for any other purpose and/or the possession of which is unlawful
and, in particular:
(See Exhibit "A")
Which said property, papers, articles or things were, are or will be possessed and/or used in
violation of Title 16, Chapter 4751 thru 4755;



PROBABLE CAUSE

And that the facts tending to establish probable cause for believing that the foregoing grounds for the application exists area as follows:

1. That your affiant is Detective / Task Force Officer Ronald A. Marzec who has been employed by the Delmar Police Department since January 1994. Your affiant is currently assigned to the United State's Department of Justice Drug Enforcement Administration Drug Task Force. Your affiant's duties in this capacity include the investigation and enforcement of illegal drug and money laundering violations. Your affiant graduated from the Eastern Shore Criminal Justice Academy where your affiant received 647 hours of training, which included training in the detection and recognition of controlled dangerous substances. Your affiant received updated training on an annual basis in the areas of controlled dangerous substance violation, investigations and arrests. Your affiant has authored in excess of fifty search warrants and has assisted in making in excess of 100 arrests where controlled dangerous substances were seized.

2. During the month of May, 2005, your affiant received information from several law enforcement agencies about a B/M named Steve HICKMAN who was distributing cocaine in the Sussex County, Delaware area. The information advised that HICKMAN lists his address through the Delaware Department of Motor vehicles as residing in Dagsboro, Delaware although HICKAMN actually resided on Greentop Road Ellendale, Delaware.

3. During the month of May, 2005 your affiant met with a confidential source, hereinafter referred to as "A". "A" has been known to law enforcement for several years. During this time, "A" has related information to law enforcement that has resulted in arrests and the seizure of controlled substances. "A" has never provided information to law enforcement proven to be false. "A" advised your affiant that "A" was familiar with a black male known to "A" as Steve HICKMAN, ("A" also knew HICKMAN by the nickname LITTLEMAN) who was involved in a cocaine distribution organization in the Sussex County, Delaware area. "A" advised your affiant that HICKMAN resides on Greentop Road Ellendale, Delaware with his girlfriend (Unknown name). "A" stated that HICKMAN sells cocaine from his residence on Greentop Road and keeps proceeds from sales of drugs at his Greentop Road residence. "A" advised that HICKMAN departs his residence around lunch time and travels to a trailer park located south of Ellendale, Delaware known to "A" as "the hole". "A" stated that HICKMAN travels to a trailer located in the rear of the trailer park where HICKMAN utilizes a trailer as a packaging/sale house. "A" advised that HICKMAN will arrive around lunch time and remain at the location where HICKMAN will sell cocaine to his customers. "A" stated that HICKMAN will travel from this location once or twice a week and purchase cocaine from his source and return to his packaging/sale house where HICKMAN will cook the powder cocaine into crack cocaine. HICKMAN will take the crack cocaine and divide the crack cocaine into several packages. HICKMAN will then take the packages and hide the packages of cocaine in several locations along the roadside in remote country areas around Ellendale, Delaware. "A" stated that HICKMAN divides the cocaine into smaller packages to avoid being caught by law enforcement with larger amounts of cocaine that would carry enhanced penalties. "A" stated that a black male known to "A" as LEE LEWIS is related to HICKMAN and assists HICKMAN with the distribution

organization. "A" stated that when LEE and HICKMAN travel out of the hole together, they are usually traveling to HICKMAN's source to obtain cocaine. "A" advised that HICKMAN travels back to his Greentop Road residence at the end of the night when HICKMAN is finished selling cocaine for the day. "A" stated that HICKMAN takes his proceeds from the sale of cocaine back to his Greentop residence and keeps his money secreted within the residence. "A" advised your affiant that HICKMAN owns several properties around the Ellendale area that HICKMAN has bragged about purchasing the properties with proceeds from drug transactions.

4. During the month of June, 2005, your affiant and "A" traveled to Greentop Road Ellendale, Delaware where "A" pointed to two trailers located on the West side of Greentop Road. "A" advised your affiant that HICKMAN resided in the single wide trailer at the present time but was in the process of moving into the tan double wide located next to the singlewide trailer. "A" and your affiant traveled to a trailer park south of the town of Ellendale. "A" pointed to two trailers that were located on the north east dead end area of the trailer park. "A" advised your affiant that the two trailers were operated by HICKMAN as the packaging/sales house.

5. During the month of May, 2005 your affiant queried the Delaware Criminal Justice Information System in reference to Steve HICKMAN. Your affiant obtained a photo of HICKMAN and your affiant learned the following:

    A: HICKMAN was arrested on 11-22-1996 by Delaware State Police for Trafficking in Cocaine.

6. During the month of June, 2005 your affiant and members of Law Enforcement conducted surveillance of HICKMAN. Surveillance was established in the area of New Hope Road Ellendale, Delaware (A.K.A. The Hole). Law enforcement officers observed HICKMAN arrive at his packaging/sales trailers. Shortly after HICKMAN's arrival Law Enforcement Officers observed numerous vehicles per hour arrive at the sales residence. Law Enforcement Officers observed HICKMAN walk from the trailer and walk up to the vehicles. Officers observed HICKAMN engage in brief conversations with the occupants of the vehicles and engage in transactions with subjects within the vehicles. Officers observed the vehicles depart the trailer park after the transactions. Your affiant noted that many of the vehicle remained at HICKMANS location for only a minute and depart after a transaction with HICKMAN. Your affiant knows through his training and experience that this type of activity is indicative of the distribution of illegal drugs.

7. On June 23, 2005 your affiant and members of law enforcement established surveillance of HICKMAN at his sales trailer. Law Enforcement Officers observed numerous vehicles per hour arrive at the sales residence. Law Enforcement Officers observed HICKMAN walk from the trailer and walk up to the vehicles. Officers observed HICKAMN engage in brief conversations with the occupants of the vehicles and engage in transactions with subjects within the vehicles. Officers observed the vehicles depart the trailer park after the transactions. Your affiant noted that many of the vehicle remained at HICKMANS location for only a minute and depart after a transaction with HICKMAN. Your affiant knows through his training and experience that this type of activity is indicative of the distribution of illegal drugs. Law Enforcement Officers observed HICKMAN enter an old pick-up truck. Law Enforcement Officers observed HICKMAN travel to a remote location West of Ellendale, Delaware. Officers observed HICKMAN park on the side of a road and appeared to be holding tissue paper in his hand and standing against a road sign. After a period of a few minutes, HICKMAN entered his pick-up truck and departed the area. Law Enforcement Officers searched the area where HICKMAN stopped and located a plastic bag wrapped in tissue secreted in the traffic sign. Your affiant observed the package to contain approximately nine grams of cocaine packaged in several plastic bags.

8. Your affiant sent the cocaine recovered from the street sign to the Drug Enforcement Administration for analysis. A certified chemist tested the substance and determined the substance to be cocaine.

9. On June 30, 2005, your affiant and members of law enforcement conducted surveillance of HICKMAN at the Greentop Road area and observed HICKMAN depart his Greentop Road residence. HICKMAN traveled to his packaging/sales trailer located in "The Hole". Law Enforcement Officers observed numerous vehicles per hour arrive at the sales residence. Law Enforcement Officers observed HICKMAN walk from the trailer and walk up to the vehicles. Officers observed HICKAMN engage in brief conversations with the occupants of the vehicles and engage in transactions with subjects within the vehicles. Officers observed the vehicles depart the trailer park after the transactions. Your affiant noted that many of the vehicles remained at HICKMANS location for only a minute and depart after a transaction with HICKMAN. Your affiant knows through his training and experience that this type of activity is indicative of the distribution of illegal drugs. Law Enforcement Officers observed a black male identified as LEE LEWIS arrive at HICKMANS packaging/sales trailer. Law Enforcement Officers observed HICKMAN and LEWIS enter a Cadillac with another black male. Law Enforcement Officers observed HICKMAN then travel to a residence located north of Ellendale and meet with a black male subject. Law Enforcement Officers then observed HICKMAN, LEWIS and the unknown B/M travel to HICKMAN's residence located on Greentop Road, known as 9008 Green Top Road, where HICKMAN was observed entering the residence alone. HICKMAN departed the residence and re-entered the Cadillac with LEWIS and the third B/M. Law Enforcement Officers observed the Cadillac travel to a shopping plaza located in Georgetown, Delaware where your affiant observed the Cadillac park and appear to be waiting for someone. Law Enforcement Officers observed a brown pick-up truck arrive after a period of time. HICKMAN was observed exiting his Cadillac and opening the passenger door of the pick-up truck. HICKMAN was observed handing the sole occupant of the pick-up an object and the driver in turn handed HICKMAN a package. HICKMAN re-entered the Cadillac and after a short period of time the Cadillac was observed departing the parking lot. Your affiant requested Georgetown Police Department stop the Cadillac. Law Enforcement Officers observed the Cadillac travel north on Rt 113 and observed a marked Georgetown Police vehicle activate their emergency equipment. Law Enforcement Officers observed the Cadillac fail to yield and a pursuit ensued. The Cadillac eventually came to a stop on Donavan Road Georgetown, Delaware and HICKMAN elited from the vehicle. HICKMAN was caught and arrested after a brief foot pursuit. During the foot pursuit, officers observed HICKMAN through a bag. Law Enforcement Officers recovered the bag and located over 70 grams of suspected cocaine. Your affiant interviewed HICKMAN and learned HICKMAN was not employed.

10. Your affiant field tested the suspected cocaine utilizing a reagent field test kit for the presumptive identification of controlled substances. Your affiant noted a positive result for the presence of cocaine, schedule II, Controlled Substance.

11. During the month of July, 2005, your affiant conducted surveillance of HICKMAN's residence on Greentop Road. Your affiant observed HICKMAN at the residence.

12. During the month of August, 2005, "A" advised your affiant that HICKMAN had posted bail and was released from jail. "A" further related to your affiant that HICKMAN was still involved in the distribution of cocaine. "A" stated that HICKMAN had changed the way he distributed cocaine. "A" stated HICKMAN no longer utilized his packaging/sales trailer in "The Hole" but now HICKMAN was selling cocaine from his Greentop Road residence. "A" advised that HICKMAN moved into the double wide trailer located at the same location. "A" stated that HICKMAN continued to store proceeds from his drug sales inside his Green Top Road residence.

13. During the month of September, 2005, "A" advised your affiant that HICKMAN was still distributing cocaine from his Greentop Road residence. "A" advised that HICKMAN had invested proceeds from drug sales in other properties/real estate in the Greentop Road and Ellendale, Delaware area. "A" further advised HICKMAN had made purchases of expensive items for his residence at Greentop Road to include a gazebo type addition and deck that HICKMAN was in the process of adding to his double wide trailer on Greentop Road. "A" advised your affiant that HICKMAN was not employed and had no known source of employment other than selling cocaine.

14. During the week beginning September 14, 2005, Your affiant traveled to 9008 Greentop Road. Your affiant observed construction taking place in the rear of the residence. Your affiant observed what appeared to be a gazebo and decking being added to the residence. Your affiant also observed a pick-up truck operated by HICKMAN parked in the rear of the residence.

**WHEREFORE, THIS** AFFIANT PRAYS THAT A SEARCH WARRANT MAY BE ISSUED AUTHORIZING A SEARCH OF THE AFORESAID HOUSE, PLACE CONVEYANCE, PERSON OR PERSONS, OR OCCUPANTS IN THE MANNER PROVIDED BY LAW.

_____
AFFIANT

SWORN TO (OR AFFIRMED) AND SUBSCRIBED BEFORE ME THIS___DAY OF September, 2005.

_____
JUDGE

**EXHIBIT A** (Property to be seized)

1. Books, records, receipts, notes, ledgers and other papers relating to the transportation, ordering, purchase and distribution of controlled substances, in particular, cocaine, marihuana and other Controlled Dangerous Substances;

2. Papers, tickets, notes, receipts and other items relating to domestic and international travel;

3. Books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier checks, bank checks, safe deposit box keys, money wrappers, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or store expenditure of money;

4. Electronic equipment, such as computers, telex machines, facsimile machines, currency counting machines, telephone answering machines, related manuals used to generate, transfer, count, record and/or store information described in items 1, 2, 3 and 5 of this exhibit. Additionally, computer software, tapes, discs, audio tapes, and the contents therein, containing the information generated by the aforementioned electronic equipment;

5. United States Currency, precious metals, jewelry, and financial instruments, including stocks and bonds;

6. Photographs, including still photos, negatives, video tapes, films, undeveloped film and the contents therein, slides, in particular photographs of co-conspirators, of assets and/or controlled dangerous substances;

7. Address and/or telephone books, Rolodex indexes and any papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers and/or telex numbers of co-conspirators, sources of supply, customers, financial institutions and other individuals or business's with whom a financial relationship exists;

8. Indicia of occupancy, residency, rental and/or ownership of the premises described herein, including, but not limited to utility and telephone bills, canceled envelopes, rental purchase and or lease agreements and keys;

9. Firearms, ammunition, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine-guns and other weapons, and any records or receipts pertaining to firearms and ammunition;

10. Coca leaves, including cocaine and ecgonine and their salts, isomers, derivatives and the salts of isomers and derivatives, and any salt, compound, derivative or preparation of coca leaves, and any salt, compound, derivative or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions which do not contain cocaine or ecgonine.

EXHIBIT C

## Declaration of Ronald Marzec

1. My name is Ronald Marzec. I have been a detective with the Delmar, Delaware Police Department since January, 1994. However, from July 9, 1997, until the present, I was designated a Task Force Officer with the federal Drug Enforcement Administration ("DEA").

2. I submit this declaration in support of my motion for summary judgment in the matter of *Hickman v. Marzec*, Consol. C. A. Nos. 05-811 & 05-839 (D. Del.).

3. In the spring and summer of 2005, in my capacity as a DEA Task Force Officer, I participated in an investigation into possible illegal narcotics dealing by Steve Hickman.

4. In connection with the Hickman investigation, on numerous occasions I conducted surveillance of a trailer located at 9008 Greentop Road in Sussex County, Delaware. I observed Hickman and Tawanda Weatherspoon enter and leave that trailer on numerous occasions. To the best of my knowledge and belief, Hickman and Weatherspoon resided in the trailer located at 9008 Greentop Road in Sussex County, Delaware.

5. In connection with the Hickman investigation, I signed an affidavit in support of a search warrant for the trailer located at 9008 Greentop Road in Ellendale, Sussex County, Delaware.

6. While I was preparing that search warrant, I entered Hickman's and Weatherspoon's name into the Delaware Criminal Justice Information System computer to determine their listed address. The computer indicated that Hickman lived at an address that I knew was not the 9008 Greentop Road location. The computer indicated that Weatherspoon lived at a rural route address in Ellendale, Delaware.

7. Upon information and belief, a few years ago Delaware stopped using rural route addresses for many residences in Sussex County and replaced those addresses with street names.

8.     I had no reason to believe that the computer was wrong when it indicated that Weatherspoon lived in Ellendale, Delaware.

9.     On September 21, 2005, in my capacity as a DEA Task Force Officer, I executed the search warrant for Hickman's residence and seized several items. During the search I was accompanied by, among others, the Ellendale Police Chief.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated this 31 st day of March, 2006.

Ronald Marzec

EXHIBIT D

### Declaration of Thomas Jacobs

1.      My name is Thomas Jacobs. From March, 1990 until the present, I have been employed as a Special Agent with the federal Drug Enforcement Administration ("DEA").

2.      I submit this declaration in support of my motion for summary judgment in the matter of *Hickman v. Marzec*, Consol. C. A. Nos. 05-811 & 05-839 (D. Del.).

3.      On September 21, 2005, in my capacity as a DEA Special Agent, I helped execute a search warrant to search the residence of Steve Hickman which was a trailer located at 9008 Greentop Road in Sussex County, Delaware, and seized several items. During the search I was accompanied by, among others, the Ellendale Police Chief.

4.      At the time of the search, I had no reason to believe that the search warrant was incorrect when it stated that Hickman lived in Ellendale, Delaware.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated this 27th day of March, 2006.

Thomas Jacobs